[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 349 
Kenneth Ray Swain was convicted of rape in the second degree and sexual abuse in the second degree. He was sentenced to five years imprisonment on the rape conviction. He was not sentenced for the sexual abuse conviction.
The State's evidence proved that the defendant, on two separate occasions, raped and sexually abused the thirteen-year-old daughter of the woman with whom he had been living.
 I
We find no evidence of purposeful discrimination by the prosecutor in the use of his peremptory strikes in selecting the trial jury and no violation of the principles of Batson v.Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
First, there was no timely objection. Defense counsel objected only after the jury was empaneled and sworn. "In light of Batson, the proper time to raise such an objection was after the peremptory strikes had been made, but prior to the jury being sworn." Williams v. State, 712 S.W.2d 835, 840
(Tex.Dist.Ct.App., 1986). Even when the motion to quash the jury panel was made it was equivocal, provisional, and conditional "on the outcome of the case." A defendant may not speculate on the outcome of the case in making his objections and proving the allegations on which those objections are based. Cf. Van Antwerp v. State, 358 So.2d 782, 791
(Ala.Cr.App.), cert. denied, Ex parte Van Antwerp,358 So.2d 791 (Ala. 1978).
Second, the defendant has not established a prima facie case of discriminatory selection. When objection was made, the record shows the following, and only the following, with regard to this issue:
 "MR. REDD [Defense Counsel]: Judge, I move that the jury panel just selected be quashed, for reasons that there has been a systematic elimination of blacks from that particular jury. Of nineteen strikes, the State has struck thirteen black members of the panel. And from a recent Supreme Court opinion, that would be prohibited. I don't know, but perhaps this could be taken up later. It would depend on the outcome of the case. But we would make that motion.
 "THE COURT: How many blacks are there actually on the jury. I saw a number of them.
 "MR. CONOVER [Assistant District Attorney]: I think five, four or five.
"THE COURT: I'll overrule the motion."
The fact that not all black jurors were excluded from a black defendant's trial does not compel the conclusion that the defendant was afforded equal protection.
 "First, the court found that because all black jurors were not excluded from Fleming's jury as they were in Batson, the latter case did not apply. But nothing in Batson compels the district court's conclusion that constitutional guarantees are never abridged if all black jurors but one or two are struck because of their race. On the contrary, Batson restates the principle that ' "[a] single invidiously discriminatory governmental act" is not *Page 350 
"immunized by the absence of such discrimination in the making of other comparable decisions." ' Batson, supra, 106 S.Ct. at 1722, quoting Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 266, n. 14, 97 S.Ct. 555, 564, n. 14, 50 L.Ed.2d 450 (1977). We cannot agree that Batson may be rendered a priori inapplicable by a prosecutorial game of numbers." Fleming v. Kemp, 794 F.2d 1478, 1483 (11th Cir. 1986).
"As a general matter, a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes." Bohen v. City of East Chicago, Ind.,799 F.2d 1180, 1186-87 (7th Cir. 1986).
Despite the reason for the trial court's ruling, the defendant is not entitled to relief because he failed to make a prima facie case of purposeful discrimination in the prosecutor's exercise of peremptory challenges. "As in any equal protection case, the 'burden is, of course,' on the defendant who alleges discriminatory selection of the venire 'to prove the existence of purposeful discrimination.' "Batson, ___ U.S. at ___, 106 S.Ct. at 1721.
To establish a prima facie case, the defendant must show: (1) "that he is a member of a cognizable racial group"; (2) "that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race"; and (3) "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice [peremptory challenges] to exclude veniremen from the petit jury on account of their race." Batson, ___ U.S. at ___, 106 S.Ct. at 1723;United States v. Erwin, 793 F.2d 656, 667 (5th Cir. 1986). In making a prima facie showing, "the defendant is entitled to rely on the fact, . . . that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " Batson, ___ U.S. at ___,106 S.Ct. at 1723.
Here, the defendant has failed in establishing the third and "most important criteri[on]." State v. Newman, 491 So.2d 174,177 (La.App. 1986). He has failed to present any record of voir dire. "[T]he trial judge [has] broad discretion to determine whether an inquiry into racially neutral reasons for peremptory challenges must be made. . . . The reason for this is that one present at voir dire can make observations which the record does not necessarily disclose and which could explain peremptory challenges on race neutral grounds." Rose v.State, 492 So.2d 1353, 1356 (Fla.Dist.Ct.App., 1986) (Sharp, J, dissenting).
The record before us only shows that the prosecutor struck thirteen blacks and six whites from the jury venire. Although we recognize that "striking a disproportionate number so as to render minority representation on the jury impotent can be enough to make out a prima facie showing," Williams, 712 S.W.2d at 841, the record does not reveal the number of blacks on the jury venire and consequently does not supply a finding of disproportionality.
Other than the bare allegation of defense counsel, there is nothing in the record to indicate that the prosecutor struck the thirteen blacks from the jury panel on the basis of race. "This court cannot find systematic exclusion of blacks based on a mere allusion." People v. Peters, 144 Ill. App.3d 310, 98 Ill.Dec. 731, 494 N.E.2d 853, 862 (1986). "While the Supreme Court declined 'to formulate particular procedure to be followed upon a defendant's timely objection to a prosecutor's challenges,' Batson, [___] U.S. at [___], 106 S.Ct. [at] 1724, we cannot read the opinion to require a prosecutor to explain his right of peremptory challenges upon a defendant's mere objection to a jury and unsubstantiated claims of discrimination." Weekly v. State, 496 N.E.2d 29, 31 (Ind. 1986) (general objection without reason; number and race of stricken jurors unknown). In Sashner v. State, 500 So.2d 1322
(Ala.Cr.App. 1986), we held that "the mere allegation that the prosecutor 'used all her strikes to try to eliminate all of the blacks off the jury' does not constitute a *Page 351 
prima facie showing of discriminatory selection of the venire."
The removal of blacks by the use of peremptory challenges does not, by itself, raise an inference of racial discrimination. Phillips v. State, 496 N.E.2d 87, 89 (Ind. 1986).
 "Under Batson, the prosecution must necessarily exercise its strikes to enable the defendant to make a prima facie showing that the strikes were used in a racially discriminatory fashion. Appellant's argument presumes that the state will act with this purpose. This argument misplaces the burden of proof. The Supreme Court clearly stated in Batson that, as in any equal protection case, the burden is on the party alleging the discriminatory action to prove the existence of a racially discriminatory purpose.
 "There still exists, at least initially, a presumption that the state has exercised its peremptory challenges with a neutral purpose, though now it is a realistically rebuttable one. Batson does not require the state to provide a benign justification for peremptorily striking Blacks from a petit jury absent a prima facie showing by the defendant that the strikes were made solely on the basis of race." Williams, 712 S.W.2d at 840-41.
There exists a rebuttable presumption that the prosecution has exercised its peremptory challenges on constitutionally permissible grounds. This presumption is justified for three reasons:
 "We begin with the rebuttable presumption that the prosecution has exercised its peremptory challenges on grounds permissible under Article I, paragraphs 5, 9, and 10 of the New Jersey Constitution. We adopt this presumption for three reasons: first, out of respect for prosecutors, who we do not assume will shirk their obligation to do justice for the cynical cant that their duty is to obtain a conviction; second, out of homage to the very old credentials of the peremptory challenge; and third, out of deference to the legislative intent expressed in N.J.S.A. 2A:78-7, which allows peremptory challenges." State v. Gilmore, 103 N.J. 508, 511 A.2d 1150, 1164 (1986).
Alabama provisions similar to those of New Jersey are Ala. Const. art. I, §§ 1, 6, 11 and § 12-16-100, Code of Alabama 1975.
For these reasons, we find that the defendant's motion to quash the jury was properly overruled.
 II
The defendant maintains that his statement was due to be suppressed as the fruit of an illegal arrest. He claims that the arrest warrant was invalid because it was based on the purely conclusory statements of a non-victim, non-witness affiant, whose affidavit did not provide probable cause to believe that the defendant had committed the offense of rape. The affidavit, signed by the mother of the thirteen-year-old victim, recited the following:
 "Before me, the undersigned authority, personally appeared [the victim's mother], who being duly sworn, says on oath that she has probable cause for believing, and does believe, that in said county and State, on or about the 2nd day of May, 1985, one Kenneth Ray Swain, a male, did unlawfully engage in sexual intercourse with [the victim], who was less than sixteen years of age and more than twelve years of age, the said Kenneth Ray Swain being 16 years or older and at least two years older than the said [victim], in violation of § 13A-6-62 of the Code of Alabama, against the peace and dignity of the State of Alabama."
The fact that the affidavit was signed by the child's mother, who was neither the victim of the crime nor a witness to the offense, does not of itself prevent the affidavit from establishing probable cause to arrest the defendant. An affidavit need not reflect the direct personal observations of the affiant and may be based on hearsay, see Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); UnitedStates v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684
(1965).
 "Probable cause to arrest exists when, at the time the magistrate issues the warrant or the officer makes the arrest, *Page 352 
there are reasonably trustworthy facts and circumstances sufficient, given the totality of the circumstances, to lead a reasonable person to believe there is a fair probability that the suspect is committing or has committed an offense."
Fifteenth Annual Review of Criminal Procedure; United StatesSupreme Court and Courts of Appeal 1984-1985, 74 Geo. L.J. 499, 518 (1986).
The hearsay evidence of a mother who avers that her daughter has been the victim of a crime is not unworthy of credit and may be used as the basis of probable cause for an arrest warrant. State ex rel. Douglas v. District Court, 161 Mont. 525, 507 P.2d 1055 (1973) (affiant complained to magistrate that her fifteen-year-old daughter had been given intoxicating beverages by the accused). See Crittenden v. State,476 So.2d 626 (Ala.Cr.App. 1983), affirmed, Ex parte State, 476 So.2d 632
(Ala. 1985) (Affiant complained to magistrate that her daughter, less than twelve years old, had been sexually abused by accused.).
Nevertheless, the affidavit here, like the one at issue inCrittenden v. State, 476 So.2d at 630, is wholly insufficient to support a warrant of arrest because it is purely conclusory. It is "nothing more than the affiant's conclusion that the individual named therein had perpetrated the described offense, without setting out any factual basis for such conclusion."Malone v. State, 51 Ala. App. 19, 21, 282 So.2d 367, 368, cert. quashed, 291 Ala. 789, 282 So.2d 371 (1973).
Although the affidavit is insufficient to support a finding of probable cause to arrest, "the reviewing court is not restricted to examining the four corners of the affidavit."Holderfield v. City of Birmingham, 380 So.2d 990, 993
(Ala.Cr.App. 1979), cert. denied, Ex parte Holderfield,380 So.2d 994 (Ala.), cert. denied, Hawkins v. City of Birmingham,449 U.S. 888, 101 S.Ct. 245, 66 L.Ed.2d 114 (1980). "[I]f the affidavit is on its face insufficient to support a finding of probable cause, the State may then adduce testimony showing that the sufficient evidence was, in fact, before the issuing magistrate." Mayes v. State, 47 Ala. App. 672, 673-74,260 So.2d 403, 405 (1972). See Crittenden v. State, supra; Oliver v.State, 46 Ala. App. 118, 238 So.2d 916 (1970).
While an insufficient affidavit may be supplemented by oral testimony, the testimony must relate to the information actually disclosed to the issuing magistrate and not merely to information known by the affiant but undisclosed to the magistrate at the time of procuring the affidavit. Whiteley v.Warden, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n. 8,28 L.Ed.2d 306 (1971); Davis v. State, 500 So.2d 472 (Ala.Cr.App. 1986). See W. LaFave, 2 Search and Seizure § 4.3 (1978).
In the present case, Detective Ken Solley of the Sylacauga Police Department testified that in the course of his investigation of a rape complaint against the defendant, he talked to the victim, her brother, and her mother. Solley took all three family members to the magistrate's office, where the following occurred:
 "Q. [By defense counsel] Were you present when they made any statements to a Magistrate?
"A. [By Detective Solley] Yes, I was.
"Q. Do you remember what they said?
 "A. I, basically, went through the course of my investigation and went through the case with the Magistrate, along with some things that they had told too when the warrant was signed.
"Q. But the complaint was signed by [the mother]?
"A. Yes, sir.
"Q. Based upon her testimony, is that correct?
"A. Yes, sir.
 "MR. GIVENS: Now, Judge. Wait a minute. He said based upon her testimony.
"Q. I asked him and he said yes.
 "MR. GIVENS: Well, I object to it. You just ignored a whole set of facts that he gave you that he himself talked to the Magistrate and he thinks some other members of the family talked to the Magistrate. *Page 353 
 "MR. REDD: Your Honor, I move to suppress the statement based upon allegations made by a person who was not the victim and who was not present when the crime was committed and it would be upon the State to show that the Magistrate heard all the testimony and made the decision based upon that. We move to suppress the statement.
"THE COURT: I'll overrule."
Although Detective Solley testified that he accompanied the family members to the magistrate's office, that he "went through the course of [his] investigation" with the magistrate, and that the family members "told" the magistrate "some things," there is no evidence of exactly what facts were imparted to the magistrate. Compare Crittenden v. State, supra (Testimony that victim and her mother went to magistrate's office and may have answered questions provided no factual basis for a probable cause determination.).
While it is likely that Detective Solley may have given the warrant clerk factual details of the incident as he "went through the case" with the magistrate, we do not have those factual details before us. Compare Kotlar v. State,706 S.W.2d 697 (Tex.Dist.Ct.App. 1986) (Officer's offense report, reciting details of his investigation, was attached to affidavit). We cannot assume from Solley's testimony that the information he or anyone else gave the magistrate was sufficient to establish probable cause to arrest the defendant. We therefore remand this cause to the trial court with directions to conduct an evidentiary hearing to determine what testimony, on the part of Detective Solley, the mother, her daughter, or her son, was presented to the magistrate at the time the warrant was sought. Should the State fail to establish what specific information Detective Solley gave the warrant clerk or should the trial court determine that the information given was insufficient to establish probable cause, the trial court is directed to set aside the defendant's conviction and conduct a new trial. Davisv. State, 500 So.2d 472 (Ala.Cr.App. 1986).
REMANDED WITH DIRECTIONS.
All Judges concur.
 ON RETURN TO REMAND
On return to remand, the order of the trial judge reflects that an evidentiary hearing was held and what specific information Detective Solley presented to the magistrate to establish probable cause to arrest the defendant. The trial judge found the existence of probable cause. His finding is sound and supported by both the facts of this case and the controlling legal principles. Accordingly, the judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.